**Gyan Singh CHAVAN, Kundan Singh and Rajender Singh Kunver, Petitioners,**

v.

**David T. DRYSDALE, Officer-in-Charge of the Immigration and Naturalization Service at Albany, New York, and Benedict J. Ferro, District Director of the Immigration and Naturalization Service at Buffalo, New York, Respondents.**

**No. 80–CV–606.**

United States District Court,
N. D. New York.

May 11, 1981.

---

Ronald W. Freeman, New York City, for petitioners; Alan Lee, New York City, of counsel.

George H. Lowe, U. S. Atty., Joseph A. Pavone, Asst. U. S. Atty., Syracuse, N. Y., for respondents.

## MEMORANDUM—DECISION AND ORDER

McCURN, District Judge.

This is an action for a writ of habeas corpus, brought pursuant to 8 U.S.C. § 1105a(9) and 28 U.S.C. Chapter 153, in which the petitioners are challenging the legality of deportation orders issued by the Immigration and Naturalization Service (hereinafter "INS").

## BACKGROUND

On May 21, 1976, India Hotels, Inc., of Schenectady, New York, filed applications with the INS seeking nonimmigrant L–1 intracompany transfer visas on behalf of the petitioners.[1] The applications specified that petitioners were needed to serve as specialty cooks in a Schenectady restaurant for a period of twelve months from July 1976 to July 1977. Mr. S. J. Advani, an India Hotel's official, submitted an affidavit in support of the applications in which he stated that the petitioners' services would be needed for only a limited period of time.

The applications were approved by INS on July 23, 1976, for a period of one year to July 23, 1977. Petitioners were admitted to the United States as nonimmigrant aliens on August 22, 1976, and began working at the restaurant which served Indian specialty dishes.

---

**1.** An intracompany transferee is defined as follows:

(L) an alien who, immediately preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive or involves specialized knowledge. . . .

8 U.S.C. § 1101(a)(15).

India Hotels, Inc., is a subsidiary of a company located in Bombay, India.

On July 23, 1977, petitioners applied for and were granted extensions of temporary stay in the United States to July 23, 1978, on the grounds that the restaurant was prospering because of their cooking skills, that the restaurant was having difficulty replacing them and that the parent company in India had agreed to leave them on loan for another year.

On June 21, 1978, petitioners applied for an additional extension on the grounds that the restaurant could not stay in business without them. The INS granted the additional extension of temporary stay to July 23, 1979, but apparently informed petitioners that this would be the last extension. Allegedly as a result of receiving this information, petitioners' employer applied for labor certification on their behalf with the United States Department of Labor pursuant to 8 U.S.C. § 1182(a)(14).[2] The certification was issued on October 9, 1979.

Petitioners applied for an additional one-year extension on June 23, 1979, again on the ground that the business could not continue without them. The INS denied the applications on October 31, 1979. In denying each of the three petitioners' requests, the INS indicated that:

> The legislative history of the above provision discloses that the stay under an "L" visa should not exceed 3 years.

> The application is hereby denied on the grounds that you have been in the United States for the maximum period contemplated by the statute, you have failed to establish that you intend to depart from the United States within a definite time, and you have failed to establish that the purpose for which you were admitted has not been accomplished and that your requested extension is not merely an attempt to prolong your stay indefinitely.

On November 29, 1979, petitioners filed a motion to reconsider the denial of the L–1 extensions by the Albany officials of the INS. Petitioners argued that the INS had erred in interpreting the L–1 statute and legislative history as intending to limit admission under L–1 status to a three-year period. In addition, petitioners claimed that because the restaurant was a fairly new enterprise needing the services of the petitioners to keep going, the extensions should be granted. An order was entered on January 18, 1980, dismissing the motion to reconsider. The decision was based primarily on a finding that the request for extension was "merely a means of allowing the applicant to remain in the United States and continue his employment which is permanent in nature until such time as a sixth preference visa number becomes available." This finding was apparently grounded in large part on the fact that the petitioners' employer had sought labor certification for them on the basis of job offers for permanent employment as specialty cooks.

By letter of January 24, 1980, the INS advised the petitioners that they should depart from the United States by February 11, 1980. Petitioners' counsel sought postponement of further proceedings until such time as visa numbers became available. Nonetheless deportation proceedings were instituted on February 27, 1980, pursuant to 8 U.S.C. § 1252, by issuance of orders to show cause, notice of hearing and warrant for arrest of aliens on the grounds that petitioners were aliens who had remained in the United States beyond the time period permitted.

---

2.  8 U.S.C. § 1182(a) lists the general classes of excludable aliens. Subsection (14) explains labor certification as follows:

> (a) *General classes.* Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
>
> (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of

Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, or qualified..., and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skill or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed....

A deportation hearing was held on April 15, 1980, before the Honorable Gordon Sacks, Immigration Judge. A finding was made that the petitioners were technically deportable, and an order was entered allowing voluntary departure by July 15, 1980, in lieu of deportation.

On July 9, 1980, petitioners sought certification to the Regional Commissioner concerning the denial of their applications for temporary extensions of their L–1 status. INS refused to certify the cases on July 18, 1980. Notice of departure arrangements for July 31, 1980, were served on petitioners on July 22, 1980. On July 30, 1980, the instant habeas corpus proceeding was commenced by petitioners.

In seeking a writ of habeas corpus, petitioners allege that the INS erred in its understanding of the L–1 status provision and further claim that the Department's interpretation of the L–1 status and subsequent denial of extension to the petitioners was arbitrary, capricious, an abuse of discretion and a denial of equal protection in violation of the Fourteenth Amendment to the United States Constitution.

On July 31, 1980, deportation of the petitioners was stayed by this Court pending the issuance of a further order. Petitioners are presently free on bond pending a determination of this proceeding.

The Court heard argument on the petition for habeas corpus on December 15, 1980, reserving decision and directing counsel for petitioners to advise the Court when the priority dates for visa issuance to the three petitioners had been reached. By letter of February 13, 1981, counsel for petitioners informed the Court that their priority date for visa issuance was then current. In addition, counsel asked the Court to Order INS to allow the petitioners to adjust their status to that of permanent residents immediately.

## DISCUSSION

Jurisdiction is vested in the district court under 8 U.S.C. § 1105a(9) and 28 U.S.C. § 2241 in habeas corpus proceedings to review decisions that are collateral to depor-

tation proceedings. See *Cheng Fan Kwok v. INS*, 392 U.S. 206, 210, 88 S.Ct. 1970, 1973, 20 L.Ed.2d 1037 (1968). However, the Court's review powers in such instances have been narrowly restricted.

The authority to control immigration resides exclusively in the "political" branches of government. As explained by the Supreme Court in *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1971):

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.

(Quoting from *Lem Moon Sing v. United States*, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082 (1895).)

■ The Court will overturn discretionary decisions of the INS, only if the decision is found to have been arbitrary, capricious or an abuse of discretion. *Foti v. INS*, 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963); *DeLeon v. INS*, 547 F.2d 142, 149 (2d Cir. 1976) *cert. denied*, 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105 (1977); *Wong Wing Hang v. INS*, 360 F.2d 715 (2d Cir. 1966). Applications for extension of nonimmigrant visas are addressed to the discretion of the District Director of the INS, and decisions are made without hearing and appeal. See 8 C.F.R. § 241.1(a) (1977).

■ In reviewing the exercise of discretion, the Court may not substitute its judgment for that of the District Director. Rather, it may only determine whether the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group...." *Wong Wing Hang v. INS, supra*, 360 F.2d at 719.

The administrative decision denying petitioners' June 1979 request for a further

extension of their L–1 status was based upon the following three factors: (1) interpretation of the legislative history of 8 U.S.C. § 1101(a)(15)(L) as providing that the stay in the United States under an L–1 visa should not exceed three years; (2) failure by petitioners to establish an intent to depart from the United States within a definite time; and (3) failure by petitioners to establish that the purpose for admission to the United States had not been accomplished and that the requested extension was not merely an attempt to prolong their stay in the United States.

■ Examination of the first factor relied upon reveals that the INS appears to have misconstrued a significant aspect of the Congressional intent concerning extension of L–1 visas beyond three years. Pertinent legislative history indicates that while Congress concluded that a three-year period would normally be sufficient, that further extensions might be warranted in certain cases. As explained in House Report No. 91–851:

> A survey of international corporations indicates that a 3-year admission under the proposed "L" type visa would be sufficient. However, this should not be construed as a basis to deny bona fide requests for a renewal or extension, nor should the "L" visa holder be barred from due consideration of an application for adjustment of status if he should subsequently decide to seek permanent residence status in the United States. This would conform to the opportunity available to other nonimmigrants.

H.R.Rep.No.91–851, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Adm. News at 2750, 2755.

Apart from the apparent improper construction of legislative history concerning the appropriate length of time for admission in the United States under an L–1 visa, the reasons given represent legitimate criteria for consideration in a decision to deny an extension. Indeed, it might be said that a refusal to extend the L–1 visas could have been justified on the basis that petitioners did not establish that they were bona fide

nonimmigrants since aliens seeking entry into the United States for a limited time and purpose bear the burden of demonstrating to the INS that they are bona fide nonimmigrants. 8 U.S.C. § 1184, 1341; *Jain v. INS*, 612 F.2d 683 (2d Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980).

Nonetheless, since the decision to deny further extensions to the three petitioners was based upon the summation of three factors, one of which was grounded in an improper interpretation of Congressional intent, there is a proper case for remand to the defendant Drysdale, as Officer-in-Charge of the INS at Albany, New York, for reconsideration of the denials. See *Siang Ken Wang v. INS*, 413 F.2d 286, 287 (9th Cir. 1969).

Finally, as previously mentioned, the petitioners' priority date for visa issuance is current at this time, and they have through counsel asked this Court to order the INS to allow them to adjust their status to that of permanent residents immediately. While the Court does not believe it to be within its province to so order, it does believe that petitioners should have the opportunity to attempt to have their status adjusted to that of permanent residents.

There are two distinct questions in a proceeding on an alien's application for adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255. The first is whether the applicant is eligible for such relief. The second is whether such relief should be granted in the discretion of the Attorney General as delegated to INS officials. *Marino v. INS, U.S. Dept. of Justice*, 537 F.2d 686, 690 (2d Cir. 1976). Given that the latter determination is committed to the discretion of the INS, this Court clearly may not now direct the INS to adjust the status of petitioners to that of permanent residents.

However, as indicated in the legislative history of the L–1 provision, and "'L' visa holder [should not] be barred from due consideration of an application for adjustment of status if he should subsequently decide to seek permanent residence status in the

United States." H.R.Rep.No.91–851, U.S. Code Cong. & Admin.News 1970, p. 2755 *supra.*; see also *Marino v. I.N.S., U.S. Dept. of Justice, supra.*, 537 F.2d 693 n.9 (petitioner who was admitted to this country as a nonimmigrant visitor "was entitled to apply for adjustment of status to that of a permanent resident even though he had overstayed his visit.")

As stated in 28 U.S.C. § 2243, in a habeas corpus proceeding, "the court shall summarily hear and determine the facts and dispose of the matter as law and justice require." Having reviewed the administrative record in this case and having considered the applicable law, the Court is convinced that a writ should issue and that the deportation proceedings against the petitioners should be cancelled for the present time and that the matter should be remanded to the INS both for reconsideration of the denial of the L–1 extensions as well as for due consideration to be given petitioners' applications for adjustment of their status to that of permanent residents.

IT IS SO ORDERED.