Fred FIRESTONE, Plaintiff-Appellant,

v.

Joseph HOWERTON, individually and in his official capacity as Los Angeles District Director of the Immigration and Naturalization Service; David Crosland, individually and in his own official capacity as Commissioner of the Immigration and Naturalization Service, Defendants-Appellees.

No. 81–5241.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1982.

Decided March 11, 1982.

Gary Silbiger, Silbiger & Honing, Los Angeles, Cal., for plaintiff-appellant.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for defendants-appellees.

Before WRIGHT, ALARCON, and REINHARDT, Circuit Judges.

**EUGENE A. WRIGHT, Circuit Judge:**

Fred Firestone, an 81 year-old immigrant from the Soviet Union, entered this country in 1920. He was a member of the Workers Communist Party from 1928 to 1940, but an immigration judge dismissed deportation proceedings against him in 1964 because the government failed to prove he had been a "meaningful member."

In 1977, he applied for adjustment of status to that of a permanent resident under 8 U.S.C. § 1259.[1] That provision permits adjustment of status unless the petitioner is inadmissible under 8 U.S.C. § 1182(a). The District Director, Immigration and Naturalization Service, denied the petition based on 8 U.S.C. § 1182(a)(28),[2] which makes excludable those aliens who have been members of the Communist Party or its affiliates.

Firestone sought declaratory relief in district court. The judge dismissed his suit and granted summary judgment for the INS. Firestone appeals. Because we conclude that Congress intended to exempt from exclusion aliens with nonmeaningful membership in the Communist Party, we reverse.

**I.**

The Internal Security Act of 1950 directed deportation of aliens who had been members of the Communist Party. To correct the Attorney General's overly harsh interpretation of what constituted a "member"

1. 8 U.S.C. § 1259 reads:

> A record of lawful admission for permanent residence may, in the discretion of the Attorney General . . ., be made in the case of any alien, . . . if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under section 1182(a) of this title . . ., and he establishes that he—
>
> (a) entered the United States prior to June 30, 1948;
> (b) has had his residence in the United States continuously since such entry;
> (c) is a person of good moral character; and
> (d) is not ineligible to citizenship.

2. The relevant portion of 8 U.S.C. § 1182(a)(28) reads:

> (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
> . . . .
> (28) Aliens who are, or at any time have been, members of any of the following classes:
> . . . .
> (C) Aliens who are members of or affiliated with (i) the Communist Party of the United States, . . . (iv) the Communist or any other totalitarian party of any State of the United States, [or] or any foreign state, . . . (v) any section, subsidiary, branch, affiliate, or subdivision of any such association or party, or (vi) the direct predecessors or successors of any such association or party . . . .

under the Act, Congress in 1951 amended the statute. That amendment exempted from deportation aliens who had been members of communist organizations when they were children, by operation of law, or when required to obtain the necessities of life.[3]

When Congress enacted the Immigration and Nationality Act of 1952, it repealed these exemptions from the deportation statute, but reenacted them as part of the section governing exclusion of aliens desiring initial entry into the United States.[4]

The Supreme Court first considered the scope of the word "member" as used in the statute in *Galvan v. Press*, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). The Court examined the legislative history of the ameliorating amendment and concluded:

> Congress did not provide that the three types of situations it enumerated in the 1951 corrective statute should be the only instances where membership is so nominal as to keep an alien out of the deportable class.

*Id.* at 527, 74 S.Ct. at 741.

Elaborating on *Galvan* in *Rowoldt v. Perfetto*, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140 (1957), the Court interpreted the three exemption categories not as narrow exceptions, but as "illustrative of the spirit in which the rigorous provisions regarding deportability . . . are to be construed." *Id.* at 120, 78 S.Ct. at 183. Relying on this interpretation, the Court held that a meaningful association with the Communist Party was required for deportation. *Id.* at 120–21, 78 S.Ct. at 183–84. *See also Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 470–71, 83 S.Ct. 1819, 1820–21, 10 L.Ed.2d 1013 (1963).

These cases firmly establish the meaningful association test for deportation. Firestone argues that it should apply as well to admission qualifications.

The government, on the other hand, asserts that the meaningful association standard does not apply in cases of admissibility. It contends that deportation and admission are fundamentally different and that this difference precludes use of the meaningful association test in favor of Firestone. We are urged to hold that the same amendment, because it applies to admission of aliens rather than to deportation, requires a different interpretation.

Requiring a meaningful membership for deportation is a product of legislative intent. The Supreme Court determined that the ameliorating amendment represented an intent to exempt from deportation a class of aliens broader than the three categories specifically identified. *Galvan*, 347 U.S. at 527, 74 S.Ct. at 740–41. Clearly, this interpretation of Congress' purpose in enacting the amendment generated the meaningful association requirement for deportation. *See Gastelum-Quinones*, 374 U.S. at 470–71, 473–74, 83 S.Ct. at 1820–21, 1822.

The amendment originally applied to all three immigration statutes that excluded former members of the Communist Party. Although Congress repealed the exemption categories as they applied to deportation, the admission and naturalization sections remain subject to the 1951 amendment.

As Justice Harlan pointed out, dissenting in *Rowoldt*, the reenactment of the amendment for the admission section creates the inference that Congress intended to aid aliens seeking admission, and that by removing the amendment from the deportation statute Congress intended to impose harsher requirements for aliens facing deportation than for those seeking admission.

3. For a description of the events surrounding the amendment of the Internal Security Act of 1950, see *Galvan v. Press*, 347 U.S. 522, 526–27, 74 S.Ct. 737, 740–41, 98 L.Ed. 911 (1954).

4. The amendment appears in 8 U.S.C. § 1182(a)(28)(I), which reads:

> Any alien who is within any of the classes described in subparagraphs (B) to (H) of this paragraph because of membership in or affiliation with a party or organization . . . may, if not otherwise ineligible, be issued a visa if such alien establishes . . . that (i) such membership or affiliation is or was involuntary, or is or was solely when under sixteen years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes . . . .

355 U.S. at 123–24 & n.5, 78 S.Ct. at 185–86 & n.5 (Harlan, J., dissenting). The government argues the opposite.

■ We do not believe the differences between deportation and admission [5] justify the conclusion that Congress intended something different by amending the admission statute than it did by the same amendment to the deportation statute.

The amendment supporting the meaningful association standard, now appearing in the admission statute, should receive the same interpretation as it did when it applied to deportation.[6]

We are not alone in applying the meaningful association test to eligibility for adjustment of status, a form of admission. In *Berdo v. INS*, 432 F.2d 824 (6th Cir. 1970), the only authority squarely on point,[7] the

---

**5.** We acknowledge that deportation and admission of aliens are not the same. The Supreme Court, in *Leng May Ma v. Barber*, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958), explicitly recognized the distinction. It wrote:

> It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, *irrespective of its legality*. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry."

*Id.* at 187, 78 S.Ct. at 1073 (citations omitted) (our emphasis).

Read in context, the quoted language indicates that the Court's distinction more precisely applies to aliens outside the country compared to those already within, "irrespective of [the] legality [of the entry]." An alien applying for permanent residence is "assimilated to the position of an applicant for entry," *Yui Sing Tse v. INS*, 596 F.2d 831, 834 (9th Cir. 1979); accord, *Pei-Chi Tien v. INS*, 638 F.2d 1324, 1326 (5th Cir. 1981), but this principle should not be extended beyond its proper scope.

Assimilation to the position of an applicant for entry refers to the application of eligibility criteria for admission and to differences in burden of proof. *See Berenyi v. District Director, INS*, 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). It does not mean necessarily that an alien within the country after an entry must assume a position indistinguishable from an alien seeking initial entry.

For example, Congress has nearly unlimited power to exclude entire classes of aliens from admission. *E.g., Boutilier v. INS*, 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981); accord, *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *The Chinese Exclusion Case*, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). But it is when an alien stands "on the threshold of initial entry," *Leng May Ma*, 357 U.S. at 187, 78 S.Ct. at 1073, that congressional power to exclude is unfettered. In other circumstances, the line between deportation and admission eligibility weakens.

**6.** We follow the well-known maxim of statutory construction that, when the same terms are used in different sections of a statute, they receive the same meaning. In *Marino v. INS*, 537 F.2d 686 (2d Cir. 1976), for example, the court concluded that a "conviction" in a deportation case should mean the same as a "conviction" in an admission case. It explained:

> Both exclusion for admission, which bars any adjustment of status, and deportation are triggered under the Act by the fact that an alien has been "convicted" of certain crimes. The term "convicted" has the same meaning whether exclusion or deportation is in issue.

537 F.2d at 691 n.5 (citations omitted).

**7.** The government relies heavily on dicta in *Grzymala-Siedlecki v. United States*, 285 F.2d 836 (5th Cir. 1961). There, the alien had been denied his application for naturalization because he was a member of the Communist Party while in Poland. He relied entirely on *Rowoldt*, but the court instead reversed by finding his membership within one of the specified categories added by the ameliorative amendment.

The government claims that in admission cases, contrary to those involving deportation, any doubts, factual or legal, are resolved against the alien. It cites *Berenyi v. District Director, INS*, 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). But addressing only burden of proof and standard of review issues, *Berenyi* fails to support the attempt to derive a broad interpretation of the statute in the government's favor.

We cannot accept the categorical contention that in all admission cases, unlike those involving deportation, the statute is construed against the alien. In *Marino v. INS*, 537 F.2d 686 (2d Cir. 1976), the court relied on deportation precedent to interpret the meaning of an admission statute. It wrote:

> This principle of construction [in favor of the alien] is fully applicable in this case although we are focused specifically on the question of eligibility for adjustment of status rather than for deportability.

*Id.* at 691 n.5. This court has cited *Marino* approvingly for the same proposition. *Yui Sing Tse v. INS*, 596 F.2d 831, 835 (9th Cir. 1979).

Board of Immigration Appeals had denied Berdo's application for adjustment of status to permanent resident because of his former membership in the Communist Party in Hungary.

The Board, in what appears to be the precise argument presented here, asserted that:

> [T]he question is not the deportability of Berdo, but his exclusion, and . . . one cannot turn a determination proceeding based upon exclusion principles into one based on deportation principles.

The portion of the opinion the government considers significant is the court's criticism of *Rowoldt.* Although the court quotes the relevant portion of the *Rowoldt* opinion, which refers to meaningful association and the lack of political implications, it reads the case to require merely a "liberal interpretation" of the statute. Then, without citation to *Rowoldt,* the court wrote:

> [W]e do not find it necessary to decide whether Congress intended the exclusions to cover any purposes other than those enumerated. On the other hand it should be noted that Congress, with many of the circumstances enumerated being within their knowledge, made their exceptions rather specific. Membership in the Communist Party was not restricted to "meaningful membership" nor was "nominal membership" excepted.

*Id.* at 840.

The court's criticism of *Rowoldt*'s meaningful association standard is curious. It offers no convincing reason for the criticism and fails to confront the Supreme Court's well-founded evaluation of the legislative history. We do note that *Grzymala-Siedlecki* was decided before the Supreme Court explained its *Rowoldt* and *Galvan* opinions in *Gastelum-Quinones v. Kennedy,* 374 U.S. 469, 471–74, 83 S.Ct. 1819, 1820–22, 10 L.Ed.2d 1013 (1963).

**8.** The Supreme Court has had occasion to consider the position argued by the government here. In *Berenyi v. District Director, INS,* 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967), the petitioner urged the Court to apply the meaningful association standard to naturalization cases as well as to deportation cases. The Court did not take the opportunity to affirm the position of the INS, which argued for restriction of the meaningful association test to deportation cases.

The Court chose another ground upon which to affirm the lower court. It wrote:

> [T]he petitioner's application was not denied because of his Communist Party mem-

*Id.* at 848. The court rejected the contention[8] and applied the meaningful association standard to Berdo's petition for adjustment of status.[9]

■■ At oral argument the government conceded that if the meaningful association standard applies, Firestone's former membership does not bar the granting of his application for permanent resident status. Since we conclude that the meaningful association standard does apply in adjustment of status proceedings, his application may not be denied because of his membership in the Workers Communist Party.[10]

> bership. It was denied because, under oath, he did not tell the truth. The petitioner was not asked whether he had been "meaningfully associated" with the Communist Party.

385 U.S. at 637, 87 S.Ct. at 671.

In a footnote, which presented another unaccepted invitation to endorse the government's position, the Court noted:

> The District Court specifically refused to accept the Government's contention that the petitioner was ineligible for naturalization under the statutory provisions barring Communist Party members from citizenship . . . .

*Id.* at 637 n.12, 87 S.Ct. at 671 n.12.

**9.** The government argues that *Berdo* should not be followed. It cites a footnote in *Matter of Hajdu,* 16 I. & N.Dec. 497 (BIA 1978), in which the Board refuses to follow *Berdo.* It reads:

> In *Berdo v. INS,* . . . the court expressed the view urged by the respondent that in an adjustment of status case, the Government must show that an alien's membership in the Communist Party was "meaningful" if it is to render him inadmissible under section 212(a)(28) [8 U.S.C. § 1182(a)(28) ]. No other court has followed this line of reasoning[,] and we specifically decline to do so here.

*Id.* at 501 n.3.

Considering how rarely the question has been addressed by the courts, the Board's treatment of *Berdo* as an anomaly is unjustified. It represents the only instance in which this question has been squarely determined. As such, it deserves precedential value, regardless of the Board's preferences. A valid judicial interpretation of congressional intent cannot be defeated by an inconsistent administrative view.

**10.** Firestone is over 80 years old and has lived in the United States for more than 60 years. Contrary to the government's assertion at oral argument, these equities are relevant. *See Rowoldt v. Perfetto,* 355 U.S. at 120, 78 S.Ct. at 183 (citing *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922)).

## II.

The government further contends that a remand is necessary because it denied Firestone's application without determining whether denial is required on other, unrelated grounds. We agree that remand is appropriate.

To ensure that the other issues, if any, that affect Firestone's application are decided at the earliest possible date, we retain jurisdiction and direct that further proceedings before this court be referred to this panel.

We reverse and remand for reconsideration by the Immigration and Naturalization Service in light of this opinion.

THE MANDATE WILL ISSUE AT ONCE.