INTERNATIONAL AUTO EXCHANGE, INC. and Adel Saleh Rajab, Plaintiffs,

v.

The ATTORNEY GENERAL, Defendant.

Civ. A. No. 85–3224.

United States District Court, District of Columbia.

Sept. 17, 1986.

Charles Gordon, Washington, D.C. for plaintiffs.

John H. Palmer, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

This matter is before the Court on Cross-Motions for Summary Judgment on plaintiffs' Action for Declaratory Judgment and Injunction.

Plaintiff Rajab established International Auto Exchange, Inc. (also a plaintiff), which is a subsidiary of a Saudi Arabian Company. Plaintiff was authorized to enter the United States for this purpose under intracompany transferee ("L–1") status granted by the Immigration and Naturalization Service (INS). Plaintiff Rajab's initial approval was for one year, and he thereafter was granted three one-year extensions, the last of which expired on November 1, 1984. Plaintiff sought and was denied an additional two-and-one-half-year extension. The ultimate reason supporting the denial was that the record no longer established that Rajab's services were needed on a temporary basis only, which was a prerequisite to L–1 status.

INS is authorized to grant L–1 status and extensions pursuant to the Immigration and Naturalization Act, 8 U.S.C. 1101(a)(15) and 1184(a). The act was liberally applied by INS which granted extensions routinely upon a statement that the status was necessary for a specific time period. At the time Rajab applied for a 2½ year extension, INS had established regional adjudications centers (RACs) and a centralized Administrative Appeals Unit (AAU). These offices adopted a more restrictive application of the statute in examining whether a petition satisfied the temporary basis requirement. The offices decided that since Rajab was granted four one-year periods and then requested a 2½ year extension without providing a rationale for the necessity, the application no longer supported status as a temporary employee.

Subsequent to the denial of plaintiff's petition, INS issued a policy directive indicating that an employer's statement that the services are needed temporarily would be sufficient for an initial grant of three-year status and an extension of two more years. If extraordinary circumstances exist, an additional extension of one year could be granted, however, this sixth year would be the maximum. This directive was applicable to new or pending petitions only, so Rajab was not eligible for this new policy.

The Court recognizes the discretion given to INS to enforce the provisions of the Act and will overturn an INS determination "only if the decision is found to have been arbitrary, capricious, or an

abuse of discretion." *Chavan v. Drysdale,* 513 F.Supp. 990, 913 (N.D.N.Y.1981). *See, Foti v. INS,* 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963). The Court may only determine whether the decision was

> "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other "considerations that Congress could not have intended to make relevant."

*Wong Wing Hang v. INS,* 360 F.2d 715, 719 (2d Cir.1966), citing *U.S. ex rel. Kaloudis v. Shaughnessy,* 180 F.2d 489, 491 (2d Cir.1950).

Plaintiffs contend it is arbitrary, capricious and an abuse of discretion for INS to have adopted a more restrictive attitude. Plaintiffs assert it is further arbitrary for INS to have issued a new policy directive without making it retroactive.

▇ Defendant has cited several INS decisions from the restrictive period, which also denied petitions which did not support a statement of temporary need. The Court concludes that the restrictive approach was uniformly and consistently applied during that period,[1] and, therefore, was not arbitrary and capricious as to this plaintiff. The Court also concludes that the denial of plaintiff's petition was not based on an attempt to discriminate against plaintiff's race or other association.

The Court must therefore focus on whether it was an abuse of INS' discretion to restrictively interpret the Act's requirement that the employment be of a temporary nature, during the period prior to the INS policy directive. "From the Administrative Appeals Unit's perspective, [INS] is obliged to prevent the 'H' or 'L' statuses from being routinely used as intermediary steps to residence." (See FN 1). In the decisions rendered under the stricter interpretation,

the AAU regularly cites Matter of University of California Medical Center, 10 I & N Dec. 715 (Reg.Comm'r 1964), for the proposition that "H" or "L" extensions may not be used as a substitute for residence status while the alien awaits the availability of a visa number.

Mailman, supra Note 1, at 341, note 8.

The Act's legislative history envisioned a three year period as being sufficient for the L–1 status employee, with reasonable extension for bona fide requests. Congress also recognized that it was valid for L–1 employees to have a dual intent of working in a temporary capacity, while simultaneously seeking permanent residence. The L–1 employees should have the same "opportunity available to other nonimmigrants." H.R.Rep. No. 851, 91st Cong., 2d Sess. 6–7 (1970), U.S.Code Cong. & Admin.News 1970, pp. 2750, 2755.

▇ The Court concludes Congress did not intend the L–1 status to be extended continually without a supporting basis for requesting the temporary status. The L–1 status was created to allow "foreign nationals to learn American management techniques ... and thus more effectively manage the affiliate operations of U.S. companies when they return overseas." *Id.* at 4, U.S.Code Cong. & Admin.News 1970, p. 2752. It also enables foreign nationals to render managerial, executive or other specialized knowledge to affiliate businesses in the United States on a temporary basis. *See,* 8 U.S.C. 1101(a)(15)(L).

▇ The Court concludes it was not an abuse of INS' discretion to strictly require a temporary basis of employment in reviewing extension applications, given Congress' intent expressed in the Act's legislative history as well as INS' need to prevent abuse of the L–1 status. Although the new policy directive eases the degree of proof of temporary employment, it has the same effect as the restrictive policy by setting a five year limit on the duration of status (with a potential one-year extension

---

1. *See,* Mailman, "Policy Toughened for Temporary Workers", *Interpreter Releases,* April 12,

1985, p. 341 and cases cited therein.

for extraordinary circumstances). The fact that INS is now applying a new approach does not invalidate the interim approach *per se.* The result to an L–1 status employee is roughly equivalent. The Court concludes for this reason that it is also not arbitrary for INS to refuse to apply the new policy retroactively.[2]

ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

---

2. The Court notes that even if the new policy were applied retroactively, plaintiffs would lose the L–1 status within a year, as Rajab has been in the United States almost six years, albeit four years with legal L–1 status, and two years without.