**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Neil T. NORDBROCK, Defendant– Appellant.**

No. 93–15533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1994.

Decided Oct. 11, 1994.

William A. Cohan, Cohan & Greene, Encinitas, CA, for defendant-appellant.

Thomas Clark, U.S. Dept. of Justice, Tax Div., Washington DC, for plaintiff-appellee.

Before: NELSON and BEEZER, Circuit Judges, and LETTS,* District Judge.

Opinion by Judge LETTS

LETTS, District Judge:

## I. *OVERVIEW*

Neil T. Nordbrock's ("Nordbrock") failure to turn over requested tax returns or taxpayer information to the Internal Revenue Service ("IRS") resulted in an IRS assessment of $75,000 against Nordbrock and a lifetime injunction prohibiting him from preparing tax returns for others. Nordbrock now appeals from the district court's judgment for the Government on his claim for a refund of the small portion of the assessment which he actually paid and on the Government's counterclaim for the balance of the assessment. Nordbrock also appeals from the lifetime injunction.

Nordbrock alleges four grounds for reversing the district court's judgment. First, Nordbrock argues that the district court erred in instructing the jury that Nordbrock bore the burden of proving reasonable cause for his failure to produce the requested information, rather than that the Government bore the burden of proving that Nordbrock willfully refused production. Second, Nordbrock argues that there was insufficient evidence to support the jury's verdict. Third,

---

* The Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation.

Nordbrock claims that the Government did not establish the essential prerequisites for a lifetime injunction against his preparing tax returns for other people. Finally, Nordbrock contends that the district court erroneously denied his motion for a new trial and motion to alter or amend the judgment based on newly discovered evidence.

■ We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1).[1] For the reasons that follow, we affirm the judgment of the district court.

## II. *FACTS AND PROCEDURAL HISTORY*

### A. *The First Trials and Consolidated Appeal*

In 1982, Nordbrock testified in criminal proceedings against accountant Karl Dahlstrom. Shortly thereafter, IRS agent Sharon Bennett ("Bennett") requested, pursuant to 26 U.S.C. § 6107(b), certain information from Nordbrock regarding income tax returns which he prepared for others for the tax periods of July 1, 1978 through June 30, 1981. Through Bennett, the IRS asked Nordbrock to furnish either copies of the returns or a list of the taxpayers' names and taxpayer identification numbers.

Nordbrock consulted attorney Donald MacPherson, a certified criminal tax expert, who had represented accountant Dahlstrom in Dahlstrom's prosecution. Nordbrock subsequently provided to the IRS a document with the necessary information redacted. Nordbrock also objected to the request under the First, Fourth, Fifth, Ninth, and Tenth Amendments to the United States Constitution and asked for act of production

immunity pursuant to 18 U.S.C. §§ 6001 *et seq.*

After several years of actively pursuing its request, the IRS assessed penalties of $75,000 against Nordbrock for his failure to comply. Nordbrock paid $250 of this assessment and requested that the balance be abated and his payment refunded. The IRS denied this request.

In August of 1983, the IRS brought an action in the district court to enjoin Nordbrock from withholding the requested information. That case was assigned to Judge William D. Browning. In July of 1985, the district court granted the Government's motion for summary judgment, ordered Nordbrock to provide the requested information to the IRS, and enjoined Nordbrock from preparing tax returns for other taxpayers. Nordbrock complied by giving a client list to the IRS and closing down his tax return preparation business.

In December of 1983, Nordbrock filed a separate action in the district court praying for a refund of the $250 he had paid and an abatement of the balance of the assessment. That case was assigned to Judge Robert C. Broomfield. The Government filed a counterclaim for the $74,750 balance of the assessment. Judge Broomfield disposed of Nordbrock's action by granting summary judgment for the Government. Essential to this disposition was Judge Broomfield's giving *res judicata* effect to Judge Browning's finding that Nordbrock willfully had failed to provide the requested information to the IRS in the injunction action.

These two actions were consolidated on appeal, and both were reversed. We held that Nordbrock had defeated summary judg-

---

1. The Government argues that we lack jurisdiction over Nordbrock's refund action because the district court failed to enter a final judgment on the Government's counterclaim for the unpaid balance of the assessment. *See* Fed.R.Civ.P. 54(b). This argument lacks merit. As we stated in our Order of February 18, 1993, the district court's October 28, 1992 ruling was a final and appealable order. *United States v. Nordbrock*, No. 92–16489 (9th Cir. February 18, 1993). Nordbrock's amended notice of appeal, filed December 21, 1992, was therefore timely.

Furthermore, we long have held that the absence of a separate form of judgment will not defeat jurisdiction where a party has timely filed a notice of appeal from a district court's final, entered order. *Allah v. Superior Court of State of Calif.*, 871 F.2d 887, 890 (9th Cir.1989); *see also, Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978) (noting that the separate judgment requirement should be interpreted to prevent loss of the right of appeal, not to facilitate loss). Finally, our May, 1993 granting of a limited remand to correct the judgment had, under Rule 60(a), no effect on the timeliness of Nordbrock's appeal.

ment by presenting a prima facie case of good faith reliance on the advice of counsel, which raised a factual dispute over whether Nordbrock's refusal to provide the information to the IRS was willful. *See United States v. Nordbrock,* 828 F.2d 1401 (9th Cir. 1987) (*"Nordbrock I "*).

### B. *The Second Trial and Appeal*

On remand, the refund and injunction actions again were consolidated. The district court denied Nordbrock's request for a jury trial and found that Nordbrock's failure to turn over the requested information was willful. The district court then enjoined Nordbrock from preparing tax returns and sustained the $75,000 IRS assessment. *See United States v. Nordbrock,* 734 F.Supp. 908, 911 (D.Ariz.1990).

We again reversed, holding that the district court should have granted Nordbrock's request for a jury trial. We did not reach the question of which party bore the burden of proving willfulness or lack thereof. *See United States v. Nordbrock,* 941 F.2d 947 (9th Cir.1991) (*"Nordbrock II "*).

### C. *The Third Trial*

#### 1. *Willfulness*

On remand, Nordbrock moved for a directed verdict at the close of the case, arguing that no reasonable jury could find willfulness on his part by a preponderance of the evidence. The district court agreed that the evidence could not meet a preponderance standard with the burden on the Government. However, the district court ruled that under the relevant provision of the Internal Revenue Code, 26 U.S.C. § 6695(d), the failure to provide requested information was a *per se* violation which shifted the burden to Nordbrock to prove his lack of willfulness.

The issue of willfulness was presented to the jury and decided in favor of the Government. The jury found that Nordbrock had not acted in good faith and willfully had failed to comply with the law. A lifetime injunction was entered on the basis of that verdict. The district court also entered judgment in favor of the Government on Nordbrock's claim for a refund, but did not enter

judgment on the Government's counterclaim for the $74,750 remainder of Nordbrock's assessment.

#### 2. *Statutory Basis for Assessments*

At the pre-trial hearing on remand, Nordbrock claimed that the assessments against him were invalid because they were brought under the wrong Internal Revenue Code sections. Specifically, the IRS brought the assessments under 26 U.S.C. §§ 6694(a) (unrealistically understating tax liability) and 6695(a) (failing to furnish a copy of tax return to taxpayer), which Nordbrock argued were factually inapplicable to his conduct. The district court ruled that the validity of the assessments was a matter of law to be considered after the trial.

On the last day of the trial, in response to an earlier request, the IRS produced a so-called "Non–Master File Transcript" dated before the trial, which indicated that the assessments in fact had been brought under §§ 6694(a) and 6695(a), rather than under § 6695(d). Nordbrock then moved for judgment notwithstanding the verdict and, alternatively, for a new trial or to alter or amend the judgment based on newly-discovered evidence.

In October of 1992, the district court denied Nordbrock's post-trial motions and found that many documents similar to the Non–Master File Transcript were in Nordbrock's possession at the time of trial. The district court ruled that if the assessments were valid under any one of the three provisions, they were valid as a matter of law. The district court then concluded that the assessments were valid under § 6695(d).

### III. *DISCUSSION*

### A. *The District Court Did Not Err in Requiring Nordbrock to Prove His Lack of Willfulness*

■ Nordbrock argues that the district court should have required the Government to prove that Nordbrock's failure to comply with the IRS's request was willful, instead of requiring Nordbrock to prove that his failure was not willful. Nordbrock then argues that if the correct burden of proof were applied,

the evidence was insufficient to support a verdict that he had acted willfully.

We review questions of law *de novo, 999 v. C.I.T. Corp.,* 776 F.2d 866, 871 (9th Cir.1985), as we do interpretations of the Internal Revenue Code. *Orvis v. Commissioner,* 788 F.2d 1406, 1407 (9th Cir.1986).

We hold that 26 U.S.C. § 6695(d), the statute providing for various tax return-related penalties, on its face places the burden on the tax return preparer to prove that he or she did not act·willfully in refusing to comply with an IRS information request. Section 6695(d) provides:

> Any person who is an income tax return preparer with respect to any return or claim for refund who fails to comply with section 6107(b) [requiring compliance with I.R.S. information requests] with respect to such return or claim shall pay a penalty of $50 for each such failure, *unless it is shown that such failure is due to reasonable cause and not due to willful neglect.* The maximum penalty imposed under this subsection on any person with respect to any return period shall not exceed $25,000.

26 U.S.C. § 6695(d) (emphasis added). The plain language of § 6695(d) places on the tax return preparer the burden of proving reasonable cause and a lack of willful neglect. The Supreme Court held in *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985), that 26 U.S.C. § 6651(a), which prescribes civil penalties for failure to file tax returns, placed upon the taxpayer "the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'"

We generally adhere to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation. *Firestone v. Howerton,* 671 F.2d 317, 320 n. 6 (9th Cir. 1982). Sections 6651(a) and 6695(d) employ precisely the same language regarding willful neglect and reasonable cause. The phrase, which appears in fourteen Revenue Code sections providing for penalties upon a person's failure to take a specified action, has received the same interpretation by every court of appeals which has addressed it.[2]

■ Nordbrock argues that our decision in *Nordbrock I* requires us to place the burden on the Government to prove willfulness. He asserts that our statement in *Nordbrock I* that "willfulness is an essential element of a section 7407(b) injunction action" constitutes law of the case and places the burden on the Government to prove willfulness. *See Nordbrock I,* 828 F.2d at 1401. He also argues that we are bound by *Nordbrock I* to equate the Internal Revenue Code provisions involved in this case with those addressing the use of illegal tax shelters. These arguments misinterpret *Nordbrock I.*

First, *Nordbrock I* simply does not address the allocation of the burden of proof. We held in *Nordbrock I* that willfulness is an essential element of an injunction action under § 7404(b). We reasoned that conduct could not be enjoined under § 7404(b) unless it was "subject to a penalty" under § 6695(d). *Id.* at 1403. We acknowledged that, under § 6695(d), a failure to provide information "where the failure 'is due to reasonable cause and not due to willful neglect'" was not willful, and that it followed that the willfulness requirement of § 6695(d) was necessarily an essential element in a § 7404(b) action. *Id.* Nothing in this analysis dictates that the burden is on the Government to prove willfulness. Rather, the analysis reveals that only conduct which is willful under § 6695(d) will support an injunction under § 7404(b).

Second, Nordbrock misinterprets our analogy to two other Revenue Code sections. We explained in *Nordbrock I* that our conclusion that § 7404(b) incorporated the willful-

---

2. *E.g., Genesee Valley Gas Co. v. C.I.R.,* 180 F.2d 41, 42 (D.C.Cir.1950); *Mayer's Estate v. C.I.R.,* 351 F.2d 617 (2d Cir.1965), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966); *Hatfried, Inc. v. C.I.R.,* 162 F.2d 628, 631 (3d Cir. 1947); *Roberts v. C.I.R.,* 860 F.2d 1235, 1241 (5th Cir.1988); *Service Bolt & Nut Co. v. C.I.R.,* 724 F.2d 519, 524 (6th Cir.1983); *Rubber Research, Inc. v. C.I.R.,* 422 F.2d 1402, 1407 (8th Cir.1970); *Olshausen v. C.I.R.,* 273 F.2d 23, 28 (9th Cir.1959), *cert. denied,* 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517 (1960), *Sanders v. C.I.R.,* 225 F.2d 629, 636 (10th Cir.1955), *cert. denied,* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956).

ness aspect of § 6695(d) was comparable to the Fifth and Eighth Circuits' analyses of two other Revenue Code sections. Specifically, we noted that those courts incorporated the willfulness standard of § 6700 into the injunction provision of § 7408. The relevant similarity is that § 7408 permits enjoining "conduct subject to penalty under section 6700," and therefore "the knowledge required by section 6700 [must] be present before enjoining conduct" under § 7408. *Id.* at 1404. We reject Nordbrock's argument that this comparative reasoning mandates a holding that the allocation of the burden of proof under those two statutes applies in the context of §§ 6695(d) and 7404(b).

### B. *The Evidence Supported the Jury's Verdict*

■ We now consider Nordbrock's argument that the evidence was insufficient to support the jury's verdict. We must let the jury's verdict stand if we find that it is supported by "substantial evidence." Substantial evidence is evidence which reasonable minds might accept as adequate to support a conclusion. *Davis v. Mason County,* 927 F.2d 1473, 1486 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991).

With the burden on this issue allocated to Nordbrock, we find that ample evidence supported the jury's verdict. The following evidence was introduced at trial:

(1) Testimony by Nordbrock that he did not want to produce a client list because he feared that ensuing audits of his clients would destroy his business;

(2) Testimony that Nordbrock's attorney, MacPherson, told Nordbrock that MacPherson could not give advice regarding the returns of certain clients without prior examination;

(3) Testimony by MacPherson that he did not examine these returns; and

(4) Testimony that MacPherson advised Nordbrock not to produce any information, even though MacPherson did not believe that there was incriminating information in the returns which he had not examined.

Because a jury could permissibly find from this evidence that Nordbrock had not relied upon his attorney's advice in good faith, we affirm the jury's verdict for the Government on the issue of Nordbrock's willfulness.

### C. *There Was No Reversible Error in the Jury Instructions*

■ Nordbrock argues that some jury instructions shifted the burden of persuasion from the Government to the defense. He also argues that some jury instructions removed the issue of willfulness from the jury entirely.

We review jury instructions for an abuse of discretion by examining "whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." *United States v. Kessi,* 868 F.2d 1097, 1101 (9th Cir.1989).

We find no reversible error in the jury instructions. Because we place the burden of proof as to willfulness on Nordbrock, we find that the jury instructions were accurate to the extent that they too, allocated that burden to him.

Nordbrock argues that the instructions also took from the jury the job of determining his willfulness, which was an essential element of the Government's case. Nordbrock points to Instruction No. 11 which stated in part: "The issue here is not whether Mr. Nordbrock had the right to withhold that information from the Internal Revenue Service, *which he did not,* but whether Mr. Nordbrock's refusal to provide that information was due to reasonable cause and not due to willful neglect." (Emphasis added). Nordbrock claims that by telling the jury that he had "no right" to withhold the information and by refusing to instruct on the subjective standard for willfulness set forth in *Cheek v. United States,* 498 U.S. 192, 201–02, 111 S.Ct. 604, 610–11, 112 L.Ed.2d 617 (1991), the instructions took the issue of willfulness away from the jury.

We disagree with Nordbrock, noting the following excerpt from the instructions:

If you find that Mr. Nordbrock honestly and in good faith sought the advice of an

attorney as to what he may lawfully do in the matter of responding to Revenue Agent Bennett's request, and fully and honestly laid all the facts before his counsel, and in good faith followed such advice and relied upon it believing it to be correct, and only intended that his acts should be lawful, you may not find him willful, even if the advice given by the attorney was an inaccurate construction of the law.

This instruction, taken with the jury instructions as a whole, indicates that the issue of Nordbrock's willfulness remained with the jury.

Nordbrock also argues that Instruction No. 10 erroneously stated that Nordbrock contended that "this law" was not applicable to him, rather than that this *penalty* was not applicable to him. Nordbrock contends that because he had never disputed that the relevant code sections applied to him, and had only argued over whether the penalties applied this instruction was erroneous. We conclude that any error for using the word "law" was harmless when considered with the instructions as a whole.

■ Finally, Nordbrock argues that the court erred in failing to give an instruction reflecting the holding in *Swayze v. United States,* 60 A.F.T.R.2d (P–11) 87–6031 (C.D.Cal.1987). This instruction would have stated that tax return preparers have widely divergent levels of sophistication, that Nordbrock was entitled, if not required, to obtain and rely on an attorney's opinion for responding to Revenue Agent Bennett's request and that Nordbrock enjoys lay status in relation to the profession of an attorney. Nordbrock cites *Underhill v. Royal,* 769 F.2d 1426, 1433 (9th Cir.1985) and *999 v. C.I.T. Corp.,* 776 F.2d 866, 871 (9th Cir.1985), as support for his argument that a defendant is entitled to an instruction regarding his theory of the case if it has both legal and factual support.

Nordbrock's reliance on these cases is misplaced. *C.I.T. Corp.* merely states that the failure to give a requested instruction is a question of law reviewable *de novo. 999 v. C.I.T. Corp.,* 776 F.2d at 871. The *Underhill* opinion simply does not state that a party is entitled to every instruction which the law

and facts will support. Rather, the court in that case stated that " '[i]f the instructions given allow a jury to determine intelligently the questions presented, a judgment will not be disturbed simply because further amplification was refused.' " *Underhill v. Royal,* 769 F.2d at 1433 (quoting *Ragsdell v. Southern Pac. Transp. Co.,* 688 F.2d 1281, 1282–83 (9th Cir.1982) (per curiam)). We hold that the instructions taken as a whole did in fact allow the jury to determine intelligently the questions presented. We therefore conclude that any error in excluding the *Swayze* instruction was harmless.

D. *The District Court Did Not Err in Ruling that the Government Had Proved the Essential Prerequisites for a Lifetime Injunction*

■ Nordbrock argues that the Government failed to prove the essential elements for a lifetime injunction prohibiting him from preparing tax returns for others, as set forth in 26 U.S.C. § 7407(b). This question is reviewed *de novo. See 999 v. C.I.T. Corp.* 776 F.2d at 871.

Section 7407(b) allows the district court to enjoin a tax return preparer from engaging in certain prohibited conduct. This section also states:

> If the court finds that an income tax return preparer has continually or repeatedly engaged in any conduct [prohibited herein] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as an income tax return preparer.

26 U.S.C. § 7407(b).

Nordbrock does not dispute that his conduct could be the subject of an injunction under this section, but he argues that it was improper to enjoin him for life under the circumstances of this case. He cites *United States v. Ernst & Whinney,* 735 F.2d 1296, 1303 (11th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 814 (1985), in which the Eleventh Circuit held that an essential element under this section is that

"an injunction is 'appropriate to prevent the recurrence' of the proscribed conduct.'"

Nordbrock also cites the Post–Trial Order in *Ernst & Whinney,* in which the court held that § 7407(b) serves a remedial rather than a punitive purpose and analogized the lifetime bar from preparing tax returns to the disbarment of a lawyer, which serves to protect the public. Nordbrock argues that we should construe the terms of § 7407(b) narrowly because it imposes a penalty. Nordbrock contends § 7407(b) is read narrowly, he did not "continually or repeatedly" engage in prohibited conduct. Rather, he argues, he merely refused to provide the requested information on one occasion which lasted from the time of the initial IRS request in 1982 until he complied in 1985.

Furthermore, Nordbrock argues, an injunction against him is not appropriate to prevent the occurrence of the prohibited conduct, as required in *Ernst & Whinney.* Rather, he contends, the injunction serves only a punitive purpose in this case, contrary to the purpose of § 7407.

Finally, Nordbrock cites *United States v. Franchi,* 756 F.Supp. 889 (W.D.Pa.1991), in which the district court in Pennsylvania examined the legislative history of § 7407 and concluded that this section was not intended to limit the freedom of courts to tailor injunctions to meet the equities of specific cases. Nordbrock notes that, even though the defendant in *Franchi* engaged in far more egregious conduct, the court in that case was more lenient with the defendant than in the case at bar.

In *Franchi,* the Government introduced evidence of eighty-seven assessments against the defendant over an eight-year period for inflating and fabricating expenses and deductions on clients' tax returns. *Id.* at 892. The Government also called a large number of witnesses who testified over four days about the defendant's transgressions and the harm caused. *Id.* at 893.

The *Franchi* court used four factors to determine whether to grant injunctive relief: (1) the threat of irreparable harm, (2) the balance between any irreparable harm and the injury to the enjoined tax preparer, (3) the probability of success on the merits, and (4) the public interest. *Id.* Even though all four factors were satisfied, the *Franchi* court only issued a preliminary injunction and declined to permanently deprive the defendant of his livelihood absent greater inquiry. *Id.* at 896.

As we are not bound by these out-of-circuit cases, we decline to follow *Ernst & Whinney* or *Franchi* to the extent that they are inconsistent with our holding. We agree with the Government that § 7407(b) requires only that prohibited conduct be continual *or* repeated, but not both. We also agree that, even though Nordbrock did not engage in prohibited conduct repeatedly, he did so continually.

We hold that where a tax return preparer does not comply with a demand for taxpayer information pursuant to 26 U.S.C. § 6107(b) within a reasonable period of time, where the Government responds to such non-compliance with appropriate enforcement action, and where non-compliance nonetheless continues, the tax return preparer has "continually" engaged in prohibited conduct within the meaning of § 7407(b).

Nordbrock's conduct satisfies this standard. Nordbrock did not comply with IRS agent Bennett's request for over three years, from 1982 to 1985. When it became apparent that Nordbrock would not comply with the 1982 request, the Government took appropriate enforcement action in early 1983 by assessing $75,000 against him and suing for an injunction to force his compliance. Finally, even after the initiation of these lawsuits, Nordbrock refused to comply with the IRS's request. Thus, we find no error in the district court's imposition of the lifetime injunction.

**E.** *The District Court Did Not Err in Denying Nordbrock's Post–Trial Motions*

▮ Nordbrock argues that the district court erred in denying his motion for a new trial or for relief from judgment based on newly discovered evidence. He contends that the IRS never produced any evidence at trial that he had been assessed under 26 U.S.C. § 6695(d), and that the Non–Master File Transcript which the IRS finally produced several days after the trial established that he had been assessed under different, inapplicable provisions.

We do not find this argument so persuasive as to require reversal. That is, the district court did not abuse its discretion in finding that the subsequently obtained evidence was substantially the same as that which was in Nordbrock's possession at the time of trial.

Moreover, Nordbrock's position is untenable in light of the fact that in the Pretrial Order the parties stipulated that the IRS proposed to assess Nordbrock pursuant to 26 U.S.C. § 6695(d), the correct statute, and that it actually made such assessments. We assume that, because of the documents in Nordbrock's possession at the time of trial, he entered into this stipulation with notice that the assessments might have been brought under the wrong statutory provisions. Thus, Nordbrock cannot now claim that he lacked actual knowledge of the possible defense that he waived when he entered into the stipulation. We will hold Nordbrock to the substance of his stipulation and affirm the denial of his post-trial motions.

## IV.  *CONCLUSION*

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.