T.C. Memo. 1998-388

UNITED STATES TAX COURT

ROBERT B. KEENAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 13925-95, 19874-96,    Filed November 2, 1998.
15455-97.[1]

Robert B. Keenan, pro se.

Mark A. Weiner, for respondent.

MEMORANDUM OPINION

JACOBS, Judge: Respondent determined the following
deficiencies in, and additions to, petitioner's Federal income
taxes:

---

[1] These cases were consolidated for purposes of trial,
briefing, and opinion.

Docket No. 13925-95:

| Year | Deficiency | Additions to Tax | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1992 | $19,393 | $4,848 | $846 |

Docket No. 19874-96:

| Year | Deficiency | Additions to Tax | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1988 | $73,559 | $16,120 | $4,059 |
| 1990 | 141,784 | 33,176 | 8,670 |
| 1991 | 20,822 | 4,585 | 1,040 |

Docket No. 15455-97:

| Year | Deficiency | Additions to Tax | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1989 | $70,821 | $13,734.00 | $2,871.00 |
| 1993 | 16,114 | 4,028.50 | 675.11 |
| 1994 | 17,361 | 4,340.25 | 894.53 |

Following concessions by the parties,[2] the issues for decision are: (1) Whether assessment of deficiencies and additions to tax for petitioner's 1989 tax year is barred by the expiration of the statutory period of limitations; (2) whether petitioner had taxable income in 1988 in the amount of $205,000 as a result of a purported distribution from his individual retirement account (IRA) at U.S.

---

[2] On the basis of information from third parties indicating that they had made payments of income to petitioner, respondent determined that petitioner failed to report such income. Petitioner conceded virtually all of the unreported income adjustments relating to said payments.
    Respondent conceded petitioner's entitlement to certain losses arising from forced Internal Revenue Service (IRS) tax sales in 1993.

Trust Co. of N.Y. (USTCNY); (3) whether petitioner had taxable income in 1990 in the amount of $408,623 as a result of a purported distribution from his IRA at USTCNY; (4) whether petitioner is entitled to any losses or deductions in 1992 as a result of a forced Internal Revenue Service (IRS) tax sale of his personal residence; (5) whether petitioner is entitled to $47,418 of ordinary losses in 1993 as a result of forced IRS tax sales of three of his New Mexico properties; (6) whether petitioner is entitled to any other deductible losses during the years in issue; and (7) whether petitioner is liable for the additions to tax pursuant to sections 6651(a)(1) and 6654(a) for all the years in issue.[3]

All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated, and the stipulations of facts are incorporated in our findings by this reference.

---

[3] In his posttrial brief, petitioner raised for the first time: (1) That respondent's deficiency determination for 1988 is arbitrary and capricious; and (2) that he is entitled to a casualty loss for 1991 as a result of damage to his airplane arising from a midair collision. Both of these matters were untimely raised. Nevertheless, we conclude that respondent's 1988 deficiency determination is not arbitrary or capricious and that there is nothing in the record to support petitioner's entitlement to a casualty loss for 1991.

Background

Petitioner resided in Camarillo, California, at the time he filed his petitions.

Petitioner was born on August 25, 1923. He attended college in 1941 and 1942 but did not receive a degree. Subsequently, he worked as a ship fitter in the shipbuilding industry and then enlisted in the Army Air Corps. In 1951, he became a pilot for United Airlines. In 1987, he retired from the airline. Between 1988 and 1993, petitioner flew airplanes for a worldwide delivery firm.

Petitioner failed to file Federal tax returns for 1988, 1990, 1991, 1992, 1993, and 1994.

For convenience, we have combined our remaining findings of fact and opinion with respect to each issue.

Issue 1. Statutory Period of Limitations--1989

Petitioner asserts that he timely filed a 1989 tax return and therefore maintains that the period for assessing a deficiency and additions to tax against him for 1989 expired before the date on which respondent mailed the statutory notice of deficiency (May 12, 1997) with respect to that year. Respondent maintains petitioner did not file a 1989 return.

In general, an income tax must be assessed within 3 years after the return was filed. Sec. 6501(a). If no return is filed, the tax may be assessed, or a proceeding in court for the

collection of the tax may be begun without assessment, at any time. Sec. 6501(c)(3).

The only evidence to support petitioner's assertion that he timely filed a 1989 return is his own testimony. And in this respect, petitioner's testimony was sketchy. Petitioner offered no proof concerning the date of mailing, nor did he testify as to the circumstances attending the purported mailing. Petitioner did not maintain a signed copy of the 1989 return allegedly filed. To refute petitioner's assertion, respondent introduced an IRS certificate of lack of record, dated January 8, 1998, to indicate that petitioner did not file a return for 1989.

The record reflects that petitioner wrote letters to the IRS District Director of the Fresno Service Center and the IRS Director of Foreign Operations in Washington, D.C., on December 2, 1991, indicating that he is not a "taxpayer" and is not required to file tax returns. Additionally, on February 5, 1992, petitioner wrote letters to these offices, stating: "Your office sent out a letter requesting a tax return, I returned a letter to your office denying that I was required to file a return, because I could not locate any specific part of the revenue code that made me liable for filing any sort of a return."

On the basis of the implications which can be drawn from petitioner's letters to the IRS, as well as the entire record before us, we are unable to conclude that petitioner filed a return

for 1989.  Accordingly, we hold that the period of limitations is not a bar to the assessment of a deficiency or additions to tax with regard to petitioner's 1989 tax year.

## Issue 2.  1988 Distribution

We next consider whether respondent erroneously determined that petitioner had taxable income in 1988 in the amount of $205,000 as a result of a purported distribution from his IRA at USTCNY.

By stipulation petitioner concedes that he failed to report as income a $205,000 distribution from his USTCNY IRA in 1988. Notwithstanding the stipulation, petitioner testified that sufficient funds were not available in the USTCNY IRA account to make such a distribution, and in his brief, petitioner contends that "such distribution did not occur".  Respondent maintains that sufficient funds were available in the account to make a $205,000 withdrawal and that such a distribution in fact occurred in 1988.

Rule 91(e) states that the Court will not allow a signatory to a stipulation to qualify, change, or contradict the stipulation in whole or part, except where justice otherwise requires.  A stipulation is treated as a conclusive admission by the parties, and we do not permit a party to change or contradict a stipulation, except in extraordinary circumstances. Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976).

With regard to the instant case, we are satisfied that petitioner read and understood his concession in the stipulation at the time the stipulation was filed. Petitioner failed to satisfactorily explain why he should be allowed to contradict the stipulation;[4] thus, petitioner is bound by his own admission.[5]

Issue 3. 1990 Distribution

The next issue is whether respondent erroneously determined that petitioner had taxable income in 1990 in the amount of $408,623 as a result of a distribution from his IRA at USTCNY. Although petitioner conceded that $408,623 was withdrawn from his USTCNY IRA in 1990, he testified that he timely rolled these funds into another qualified retirement account. Respondent asserts that petitioner failed to roll over the $408,623 into a qualified IRA.

Distributions from qualified retirement plans are generally includable in the distributee's income in the year of distribution as provided in section 72. Secs. 402(a)(1), 408(d)(1). An exception exists if the distribution proceeds are rolled over into an eligible retirement plan or an IRA within 60 days of the

---

[4] Petitioner is not a stranger to this Court or the U.S. District Court for the Central District of California. See Keenan v. Commissioner, T.C. Memo. 1989-300; Keenan v. United States, 77 AFTR 2d 96-2116 (D.C. Cal. 1996); Keenan v. IRS, 76 AFTR 2d 95-6624, 95-2 USTC par. 50,527 (D.C. Cal. 1995).

[5] Moreover, the record is sufficient for the Court to sustain respondent's determination that petitioner had $205,000 of taxable income as a result of a distribution from his USTCNY IRA.

distribution. Secs. 402(a)(5), 408(d)(3). We note that an IRA includes only trusts created or organized in the United States. Sec. 408(a).

On February 27, 1989, petitioner directed that $250,000 be transferred from his IRA account No. 435 to a new account, Cash Reserve IRA, account No. 26000137860 (account no. 860). On December 4, 1989, petitioner caused a distribution of $90,000 from account No. 860. (By stipulation, petitioner conceded that the 1989 distribution of $90,000 was taxable income to him during that year.) On December 31, 1989, petitioner's IRA's had values of $227,906.56 in account No. 435 and $177,642.40 in account No. 860 (totaling $405,548.96). Petitioner concedes that he caused distributions of $408,623[6] from account Nos. 435 and 860 in 1990.

At some point, petitioner established three foreign conduit trusts to diversify his investments (Yankee Trust, Fir Trust in Gibraltar, and France Trust with Sovereign Management Services, N.V., in Luxembourg). Petitioner asserts that he transferred funds into a Barclays Bank account in the Isle of Man, which renders his 1990 distribution tax free.

We do not agree with petitioner that the 1990 distribution from his IRA at USTCNY was a tax-free transaction. Petitioner failed to present any evidence that the $408,623 was transferred to

---

[6] The record does not explain the discrepancy between the $405,548.96 and $408,623 amounts.

an eligible retirement plan or any other qualified retirement plan. Apparently what he did was place the $408,623 into a series of foreign trusts. These actions (despite petitioner's assertions to the contrary) do not qualify for any tax-free rollover treatment pursuant to section 402(a)(5) or section 408(d)(3). Accordingly, we hold that the $408,623 is includable in petitioner's 1990 gross income as a taxable distribution.

Issue 4.  Losses or Deductions From Forced IRS Tax Sale of Personal Residence

The next issue is whether petitioner is entitled to any losses or deductions in 1992 as a result of an IRS forced tax sale of his personal residence. Petitioner claims that he was entitled to such a deduction or loss because he incurred interest expenses of $15,096.76, and other costs of $38.60 paid to Herman Heilscher (who is not described in the record) for the redemption of this property. Respondent argues that petitioner has failed to submit evidence entitling him to any such deduction.

We agree with respondent. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Because petitioner has failed to produce any evidence on this issue (such as substantiation of payment information or any details with regard to the amount, timing, or purpose of the alleged payments), we sustain respondent's disallowance of any loss or deduction with regard to the sale of petitioner's personal residence in 1992.

Issue 5.  Characterization of New Mexico Losses

The fifth issue is whether petitioner is entitled to a $47,418 ordinary loss in 1993 stemming from an IRS forced tax sale of three New Mexico properties he owned.  Petitioner argues that he is entitled to such a loss (arising from the difference between the market value of the properties and the amount realized at auction).  On the other hand, respondent argues that petitioner is entitled to a $47,418 capital loss.

Petitioner owned four properties at the Mid-Valley Air Park in Las Lunas, New Mexico (a residential airport).  In 1993, the IRS seized these properties in order to satisfy petitioner's Federal income tax obligation for years prior to those in issue.  After selling the four properties, respondent credited petitioner's tax accounts in amounts less than petitioner's bases in these properties.

Respondent conceded that petitioner is entitled to a $19,424.25 ordinary loss in 1993 with respect to one of the properties; namely, a rental property.  The character of the loss with respect to the other properties, an airplane hangar and two undeveloped 1-acre lots, is at issue.

Section 1001(a) defines gain or loss from the sale or other disposition of property as the difference between the "amount realized" and the taxpayer's adjusted basis in the transferred property.  The amount realized is the sum of any money received

plus the fair market value of the property (other than money) received. Sec. 1001(b). The amount realized from a sale or disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition, including a sale in foreclosure. Chilingirian v. Commissioner, 918 F.2d 1251 (6th Cir. 1990), affg. T.C. Memo. 1986-463.

Section 1221(2) provides that real property used in a trade or business is not a capital asset (and therefore a loss from the disposition of such property would be an ordinary loss). Accordingly, we must determine whether the two 1-acre lots and the airplane hangar were used in petitioner's trade or business.

The Supreme Court has stated that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Petitioner contends that he acquired the 1-acre lots and the airplane hangar for his trade or business, which involved renting space for parking and storing aircraft. We are not convinced that petitioner used the airplane hangar or the two lots in any trade or business. Petitioner failed to prove that he commenced a leasing or other commercial endeavor with respect to the airplane hangar. To the contrary, petitioner admitted that he occasionally used the hangar

to store his personal aircraft. Moreover, petitioner neither developed the two 1-acre lots nor made any attempts to lease or rent them. Petitioner was not a real estate developer and had no history of buying and selling real properties. Rather, he spent the majority of his working life as a pilot for United Airlines. We need not, and do not, accept petitioner's self-serving testimony in the absence of corroborating evidence. See Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992). Thus, we hold that petitioner did not use the two 1-acre lots and the airplane hangar in a trade or business. Accordingly, we sustain respondent on this issue.

## Issue 6. Other Deductible Losses

The sixth issue is whether petitioner is entitled to any other deductible losses (namely, with respect to funds he invested in foreign trusts) for 1992. Petitioner believes he is so entitled. Respondent disagrees.

At trial, petitioner claimed that he incurred a $521,000 loss in 1992 from his foreign trusts. The only evidence petitioner presented in this regard was an October 26, 1992, letter to him from Bernard Putz (who is not described in the record), stating that the account had "sustained a loss of US$521,000 and was automatically liquidated".

As stated earlier, deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, supra. We hold that

petitioner is not entitled to 1992 deductible losses with respect to his foreign trusts. The letter petitioner presented at best indicates that there was an unidentified account in which a $521,000 loss was sustained, but there is no indication that the account belonged to petitioner. In fact, petitioner failed to produce any statements indicating that he had the funds in any account in 1992. The evidence petitioner presented is insufficient to prove that he sustained the claimed losses. Accordingly, we hold for respondent on this issue.

Issue 7. Additions to Tax

The last issue is whether petitioner is liable for the sections 6651(a) and 6654(a) additions to tax determined by respondent. Respondent contends that petitioner is liable for these additions for the years in issue; petitioner, on the other hand, disagrees.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return. Petitioner can avoid the section 6651(a)(1) additions to tax by proving that his failure to file was: (1) Due to reasonable cause, and (2) not due to willful neglect. Sec. 6651(a)(1); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245-246 (1985); United States v. Nordbrock, 38 F.3d 440 (9th Cir. 1994). "Reasonable cause" requires a taxpayer to demonstrate that he exercised ordinary business care and prudence and was nevertheless unable to file a return within the prescribed time.

United States v. Boyle, supra at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure to file or reckless indifference.  United States v. Boyle, supra at 245.

Petitioner was required to file Federal income tax returns for 1989-94. Sec. 6012. He failed to do so and offered no satisfactory explanation. Nor has he presented any evidence to prove that his failure to file was due to reasonable cause and not willful neglect.  In fact, petitioner wrote several letters to the IRS asserting that he was not a taxpayer and accordingly refused to file income tax returns.[7]  Thus, we sustain respondent's determination of the section 6651(a)(1) additions to tax for the years in issue (1989-94).

Respondent also determined an addition to tax pursuant to section 6654(a) for the years in issue, on the basis of petitioner's failure to pay estimated tax.  Where payments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the section 6654(a) addition to tax is mandatory, unless the taxpayer shows that one of several statutory exceptions applies.  Sec. 6654(a); Niedringhaus v. Commissioner, supra at 222; Recklitis v.

---

[7]    At trial, petitioner testified that he wrote the letters on the basis of "bad" advice he received.

Commissioner, 91 T.C. 874, 913 (1988); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner bears the burden of proving qualification for the exceptions. See Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982).

Because petitioner did not make any estimated tax payments for the years in issue, introduced no evidence thereon, and has not shown that any of the exceptions apply, we sustain respondent's determination pursuant to section 6654(a) for the years in issue.

We have considered all of petitioner's arguments and, to the extent not discussed above, find them to be without merit.

To reflect concessions of the parties,

Decisions will be entered under Rule 155.